United States District Court

Eastern District of Louisiana

Bingham

v.                                    CIVIL ACTION NO. 2:04-cv-02205 J(5)

Draper

     The record reflects that a Notice of Removal has been filed in
the captioned case; accordingly,

     Pursuant to 28 U.S.C. 1447(b), the removing party is directed
to file within 10 days:

     (1) A list of all parties still remaining in this action;

     (2) Copies of all pleadings, including answers, filed by
         those parties in state court; and

     (3) Copies of the return on service of process on those
         parties filed in state court.

     New Orleans, Louisiana, August 12, 2004.

                                   By Direction of the Court

                                   LORETTA G. WHYTE, CLERK



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG -5  PM 4: 42

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JAMES R. BINGHAM, RICKY L. BINGHAM, BRIAN          *
DRAPER, RONALD DRAPER, MALCOLM DUPRE,              *
JODY HYATT, ROBERT L. HYATT, WAYNE C.              *
LINSCOMB, AND JUSTIN H. THIBODEAUX                 *

VERSUS                                             *

A.O. SMITH CORPORATION, AIRGAS-GULF STATES,        *
INC., ARCOS INDUSTRIES, L.L.C. as successor to     *
ARCOS ALLOYS CORPORATION; THE BOC GROUP,           *
INC., CATERPILLAR, INC., DELORO STELLITE           *
COMPANY, INC., DIXIE MILL, INC., THE DOW           *
CHEMICAL COMPANY, THE ESAB GROUP, INC.,            *
EUTECTIC CORPORATION; GENERAL ELECTRIC             *
COMPANY, HOBART BROTHERS COMPANY,                  *
ILLINOIS TOOL WORKS, INC., INDUSTRIAL              *
WELDING SUPPLY CO. OF HARVEY, INC., LINCOLN        *
ELECTRIC COMPANY, LINCOLN ELECTRIC                 *
HOLDINGS, METROPOLITAN LIFE INSURANCE              *
COMPANY, MILLER ELECTRIC MANUFACTURING             *
CO., INC., NATIONAL ELECTRIC MANUFACTURERS         *
ASSOCIATION, NATIONAL WELDING SUPPLY               *
COMPANY, INC., NICHOLS WIRE, INC., PRAXAIR,        *
INC., RED BALL OXYGEN CO., INC., SANDVIK, INC.,    *
SELECT-ARC, INC., SOCRA CORPORATION, as            *
Successor to ARCOS ALLOYS CORPORATION; TDY         *
INDUSTRIES, INC., TEMPLET N TEMPLET WELDING        *
SUPPLY COMPANY, INC., and VIACOM, INC.,            *
Successor by Merger to CBS CORPORATION, F/K/A      *
WESTINGHOUSE ELECTRIC CORPORATION                  *
* * * * * * * * * * * * * * * * * * * * * * * * * * *

CIVIL ACTION

NO. **04-2205**

SECTION

JUDGE **SECT. JMAG. 5**

MAG. _____

Fee ____
Process ____
X Dktd ____
CtRmDep ____
Doc. No. ____

- 1 -

39107

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants, Lincoln Electric Company; Lincoln Electric Holdings, A.O. Smith Corporation; Praxair, Inc.; The ESAB Group, Inc.; Eutectic Corporation; Allegheny Technologies Incorporated f/k/a TDY Industries, Inc.; Hobart Brothers Company; The BOC Group, Inc.; Sandvik, Inc.; Viacom, Inc., successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; and Airgas-Gulf States, Inc. (hereinafter referred to collectively as "removing defendants"), with full reservation of any and all rights, defenses and objections, including but not limited to lack of personal jurisdiction, improper venue, prescription, peremption, prematurity, lis pendens, improper cumulation of parties and/or claims, and misjoinder of parties and/or claims, hereby give notice of removal of the above-captioned action, Docket No. 2004-9698 pending in Division "C" of the Civil District Court for the Parish of Orleans, State of Louisiana, to this Court.  In support of removal, removing defendants state as follows:

1.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), in that it is being filed within thirty (30) days after the first receipt by a defendant, through service, of the Petition (hereinafter sometimes referred to as "Pet.").  Praxair, Inc. was the first served defendant, and it was served with the Petition on July 7, 2004.

2.      The Civil District Court for the Parish of Orleans is located within the district of the United States District Court for the Eastern District of Louisiana.

39107

3.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the removing defendants, which papers include the Petition, is attached hereto as Exhibit A.

## THIS COURT HAS DIVERSITY JURISDICTION

4.     This Court has original jurisdiction of this action under 28 U.S.C. § 1332, and this action is therefore removable to this Court on that basis.

      a.     The properly joined parties to this action are completely diverse:

            i.     Plaintiffs, James R. Bingham, Ricky L. Bingham, Brian Draper, Ronald Draper, Malcolm Dupre, Jody Hyatt, Robert L. Hyatt, Wayne C. Linscomb, and Justin H. Thibodeaux are described in the Petition as residents of the State of Louisiana.

            ii.     Defendant A.O. Smith Corporation is a Delaware corporation with its principal place of business in Wisconsin.

            iii.     Defendant Airgas-Gulf States, Inc., formerly known as Gulf States Airgas, Inc., is a Delaware corporation with its principal place of business in Alabama.

            iv.     Defendant Arcos Industries, L.L.C., as successor to Arcos Alloys Corporation, is a Michigan corporation with its principal place of business in Pennsylvania.  Arcos Industries, L.L.C. and all defendants properly before the Court consent to this Notice of Removal.  *See* Consent to Removal (all Consents are attached as Exhibit B *in globo*).

v.      Defendant The BOC Group, Inc. is a Delaware corporation with its principal place of business in New Jersey.

vi.      Defendant Caterpillar, Inc. is a Delaware corporation with its principal place of business in Illinois.

vii.      Defendant Deloro Stellite Company, Inc. is a Delaware corporation with its principal place of business in Missouri.

viii.      Defendant Dixie Mill, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

ix.      Defendant The Dow Chemical Company is a Delaware corporation with its principal place of business in Michigan.

x.      Defendant The ESAB Group, Inc. is an Ohio corporation with its principal place of business in South Carolina.

xi.      Defendant Eutectic Corporation is a New York corporation with its principal place of business in Wisconsin.

xii.      Defendant General Electric Company is a New York corporation with its principal place of business in New York.

xiii.      Defendant Hobart Brothers Company is an Ohio corporation with its principal place of business in Illinois.

xiv.      Defendant Illinois Tool Works, Inc. is an Delaware corporation with its principal place of business in Illinois

- 4 -

xv.     Defendant Industrial Welding Supply Co. of Harvey, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

xvi.    Defendant Lincoln Electric Company is an Ohio corporation with its principal place of business in Ohio.

xvii.   Defendant Lincoln Electric Holdings is an Ohio corporation with its principal place of business in Ohio.

xviii.  Defendant Metropolitan Life Insurance Company is a New York corporation with its principal place of business in New York.

xix.    Defendant Miller Electric Manufacturing Co., Inc. is a Wisconsin corporation with its principal place of business in Illinois.

xx.     Defendant The National Electric Manufacturers Association is a Delaware corporation with its principal place of business in Virginia.

xxi.    Defendant National Welding Supply Company, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

xxii.   Defendant Nichols Wire, Inc., individually and as successor in interest to Gulf Wire Corp., is a Maryland corporation with its principal place of business in Maryland.

xxiii.  Defendant Praxair, Inc. is a Delaware corporation with its principal place of business in Connecticut.

- 5 -

xxiv.   Defendant Red Ball Oxygen Co., Inc. is a Louisiana corporation with its principal place of business in Louisiana.

xxv.   Defendant Sandvik, Inc. is a Delaware corporation with its principal place of business in Michigan.

xxvi.   Defendant Select-Arc, Inc. is an Ohio corporation with its principal place of business in Ohio.

xxvii.   Defendant Socra Corporation, as successor to Arcos Alloys Corporation, is a Pennsylvania corporation with its principal place of business in Pennsylvania.

xxviii. Defendant Allegheny Technologies Incorporated f/k/a TDY Industries, Inc. is a California corporation with its principal place of business in Pennsylvania.

xxix.   Defendant Templet N Templet Welding Supply Company, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

xxx.   Defendant Viacom, Inc. f/k/a CBS Corporation f/k/a Westinghouse Electric Company is a Delaware corporation with its principal place of business in New York.

b.   The $75,000 amount in controversy requirement of 28 U.S.C. § 1332 is satisfied in this case. As is proper under Louisiana law, the Petition does not quantify an amount of damages. Nevertheless, where the plaintiff has not pled a

39107

specific amount of damages, "a court can determine that removal was proper if it is facially apparent that the claims are likely above" the jurisdictional amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Here, plaintiffs allege significant and permanent injuries, including but not limited to permanent neurological and physical damage, severe physical and mental pain, loss of wages, loss of earning capacity, disability, medical expenses, and loss of enjoyment of life. (Pet. at ¶¶ 43, 83). Thus, it is readily apparent from the face of the petition that such damages, if proven as a matter of law and fact, could exceed the sum of $75,000.

5.    The citizenship of Dixie Mill, Inc., Industrial Welding Supply Co. of Harvey, Inc., National Welding Supply Company, Inc., Red Ball Oxygen Co., Inc., and Templet N Templet Welding Supply Company, Inc., all named as defendants in this action, can and should be disregarded for purposes of analyzing whether complete diversity exists pursuant to the "fraudulent joinder,"[1] doctrine, as is more fully set forth below.

## NON-DIVERSE DEFENDANTS ARE FRAUDULENTLY JOINED

6.    The citizenship of a named defendant is disregarded pursuant to the fraudulent joinder doctrine where there is no possibility of recovery from that defendant. *See Potts v. R.J.R. Reynolds Tobacco*, 2001 WL 1230650 (E.D. La. Oct. 15, 2001). Here, plaintiffs have named numerous non-diverse defendants against which they have no possibility of recovery on the basis of the claims asserted.

---

[1]    "Fraudulent joinder" is used as a term-of-art. *See* Moore's Federal Practice, ¶ 107.14[c][2], at 107-56 (fraudulent joinder does not require a showing of fraud).

39107

7.    The Petition names as defendants both manufacturers of welding rods and non-manufacturing distributors.   The non-manufacturer distributors, who sold welding consumables, include non-diverse defendants Dixie Mill, Inc., Industrial Welding Supply Co. of Harvey, Inc., National Welding Supply Company, Inc., Red Ball Oxygen Co., Inc., and Templet N Templet Welding Supply Company, Inc.    However, the citizenship of these non-manufacturing defendants must be disregarded because the Petition does not state a plausible claim against them.

8.    The claims asserted by plaintiffs are premised on the existence of an alleged conspiracy on the part of welding rod manufacturers to fraudulently conceal the purported harmful effects of welding fumes.   (Pet. at ¶¶ 59-60, 77).   Plaintiffs' conspiracy theory is internally inconsistent in that it includes non-manufacturer defendants who would have necessarily been the targets of the alleged conspiracy to conceal the hazards of welding rods, and who merely sold a product designed and manufactured by others.[2]   Consequently, the non-diverse defendants, according to the plaintiffs' theory, would not have known of the alleged hazard of welding consumables and cannot be liable for merely distributing those products.[3]

9.    Alternatively, to the extent plaintiffs seek to recover from the non-manufacturer defendants on the basis of the conspiracy alleged, the Petition fails to state a claim

---

[2]    "The WELDING DEFENDANTS' products and equipment were in defective condition at the time the products and equipment left the respective WELDING DEFENDANTS' control." (Pet. at ¶47).

[3]    "[I]t is settled in Louisiana that the non-manufacturer seller of a defective product is not liable in tort absent a showing that he knew or should have known that the product sold was defective." *Jones v. Employers Mut. Liability Ins. Co.*, 430 So. 2d 357, 359 (La. App. 3d Cir. 1983).

39107

against those defendants for failure to satisfy the heightened pleading requirement of article 856 of the Louisiana Code of Civil Procedure. Specifically, the Petition fails to plead with particularity the "who, what, when and where" of the alleged conspiracy to fraudulently conceal information insofar as the non-manufacturer defendants are involved. Therefore, the citizenship of the non-manufacturer defendants must be disregarded as fraudulently joined.[4]

10.   Finally, plaintiffs contend that the incorporation of the element manganese into welding rods rendered the product defective at the time the products and equipment left the respective defendants' control. (Pet. at ¶47). Under the Louisiana Products Liability Act, however, such claims may be asserted only against manufacturers of the unreasonably dangerous product. *See* La. R.S. 9:2800:53(1)(b); *Reaux v. Deep South Equip. Co.*, 2002-1571 p.3 (La. App. 4 Cir. 2/5/03); 840 So. 2d 20, 22. The Petition therefore fails to state a claim under the Louisiana Products Liability Act against the non-manufacturing defendants, who merely distributed but did not manufacture the product. Accordingly, the citizenship of the non-manufacturing distributor defendants must be disregarded.

**WHEREFORE**, removing defendants pray that the above action, now pending against them in the Civil District Court for the Parish of Orleans, State of Louisiana, be removed to the United States District Court for the Eastern District of Louisiana.

---

[4]   To the extent plaintiffs seek to recover from the non-manufacturer defendants in redhibition for the sale of a defective product, the Petition does not allege that the plaintiffs ever purchased welding rods themselves. As mere users of welding rods, plaintiffs lack standing to assert a claim in redhibition under Louisiana Civil Code article 2520.

39107

Respectfully submitted,

Richard E. Sarver, T.A., 23558
Stephen H. Kupperman, 7890
Celeste R. Coco-Ewing, 25002
Mark J. Fernandez, 27459
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras St., Ste. 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Telefax:  (504) 589-9701

Counsel for defendants Lincoln Electric Company;
Lincoln Electric Holding, A.O. Smith Corporation;
Praxair, Inc.; The ESAB Group, Inc.; Eutectic
Corporation; Allegheny Technologies Incorporated
f/k/a TDY Industries, Inc.; Hobart Brothers
Company; The BOC Group, Inc.; Sandvik, Inc.; and
Viacom, Inc., successor by merger to CBS
Corporation f/k/a Westinghouse Electric
Corporation; and Airgas-Gulf States, Inc.

## CERTIFICATE

I hereby certify that a copy of the foregoing Notice of Removal has been served upon

each counsel of record by facsimile this 5th day of August, 2004.

39107

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. _____   SECTION " "   DIVISION

JAMES R. BINGHAM, RICKY L. BINGHAM, BRIAN DRAPER,
RONALD DRAPER, MALCOLM DUPRE, JODY HYATT,
ROBERT L. HYATT, WAYNE C. LINSCOMB, and JUSTIN H. THIBODEAUX

VERSUS

A.O. SMITH CORPORATION, AIRGAS-GULF STATES, INC., ARCOS INDUSTRIES,
L.L.C. as successor to ARCOS ALLOYS CORPORATION; THE BOC GROUP, INC.,
CATERPILLAR, INC., DELORO STELLITE COMPANY, INC., DIXIE MILL, INC.,
THE DOW CHEMICAL COMPANY, THE ESAB GROUP, INC., EUTECTIC
CORPORATION; GENERAL ELECTRIC COMPANY, HOBART BROTHERS
COMPANY, ILLINOIS TOOL WORKS, INC., INDUSTRIAL WELDING SUPPLY CO.
OF HARVEY, INC., LINCOLN ELECTRIC COMPANY, LINCOLN ELECTRIC
HOLDINGS, METROPOLITAN LIFE INSURANCE COMPANY, MILLER ELECTRIC
MANUFACTURING CO., INC.,  NATIONAL ELECTRIC MANUFACTURERS
ASSOCIATION, NATIONAL WELDING SUPPLY COMPANY, INC., NICHOLS WIRE,
INC., PRAXAIR, INC., RED BALL OXYGEN CO., INC., SANDVIK, INC.,
SELECT-ARC, INC., SOCRA CORPORATION ,as Successor to ARCOS ALLOYS
CORPORATION; TDY INDUSTRIES, INC., TEMPLET N TEMPLET WELDING
SUPPLY COMPANY, INC., and VIACOM, INC., Successor by Merger to CBS
CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION

FILED:_____          _____

                                                     DEPUTY CLERK

<u>ORIGINAL PETITION FOR DAMAGES</u>

NOW COME PETITIONERS, above-captioned, through undersigned counsel, complaining

of A.O. SMITH CORPORATION, ARCOS INDUSTRIES, L.L.C., as Successor to ARCOS

ALLOYS CORPORATION; AIRGAS-GULF STATES, INC., THE BOC GROUP, INC.,

CATERPILLAR, INC., DELORO STELLITE COMPANY, INC., DIXIE MILL, INC., THE

DOW CHEMICAL COMPANY, THE ESAB GROUP, INC., EUTECTIC CORPORATION;

GENERAL ELECTRIC COMPANY, HOBART BROTHERS COMPANY, ILLINOIS TOOL

WORKS, INC., INDUSTRIAL WELDING SUPPLY CO. OF HARVEY, INC., LINCOLN

ELECTRIC COMPANY, LINCOLN ELECTRIC HOLDINGS, METROPOLITAN LIFE

INSURANCE COMPANY,   MILLER ELECTRIC MANUFACTURING CO., INC.,

NATIONAL ELECTRIC MANUFACTURERS ASSOCIATION, NATIONAL WELDING

SUPPLY COMPANY, INC., NICHOLS WIRE, INC., PRAXAIR, INC., RED BALL OXYGEN

CO., INC., SANDVIK, INC., SELECT-ARC, INC., SOCRA CORPORATION, as Successor

to ARCOS ALLOYS CORPORATION, TDY INDUSTRIES, INC., TEMPLET N TEMPLET


EXHIBIT
4

**WELDING SUPPLY COMPANY, INC., and VIACOM, INC., Successor by Merger to CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION,** who respectfully show unto the Court the following:

1.

For all times pertinent, Petitioners are residents of the State of Louisiana who were exposed to welding fumes while using welding products and equipment or while working in the proximity of other persons using welding products or equipment in the State of Louisiana. Petitioners further adopt and incorporate the allegations concerning their respective domiciles, employment histories, and exposure histories contained in Appendix A attached to this Petition

2.

Made defendant herein is **A.O. SMITH CORPORATION ("A.O. SMITH")** (sometimes referred to herein as "Welding Defendant"), a Delaware corporation licensed to and conducting business in Louisiana  The primary place of business of A O  SMITH in the State of Louisiana is located in Orleans Parish

3

Made defendant herein is **AIRGAS-GULF STATES, INC. ("AIRGAS")** (sometimes referred to herein as "Welding Defendant),  formerly known as Gulf States Airgas, Inc., a Delaware corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana

4

Made defendant herein is **ARCOS INDUSTRIES, L.L.C., as Successor to ARCOS ALLOYS CORPORATION ("ARCOS")** (sometimes referred to herein as "Welding Defendant"), a foreign corporation conducting business in Louisiana, which has conducted and does conduct business in Louisiana

5

Made defendant herein is **THE BOC GROUP, INC. ("BOC GROUP")**, as successor-in-interest to Airco, Inc  (sometimes referred to herein as "Welding Defendant"), a Delaware corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

2

6

Made defendant herein is **CATERPILLAR, INC., ("CATERPILLAR")** (sometimes referred to herein as "Welding Defendant"), a Delaware corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

7.

Made defendant herein is **DELORO STELLITE COMPANY, INC. ("DELORO")** sometimes referred to herein as "Welding Defendant"), a Delaware corporation which has conducted and does conduct business in Louisiana

8.

Made defendant herein is **DIXIE MILL, INC ("DIXIE MILL")** (sometimes referred to herein as "Supplier Defendant"), a Louisiana corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana. The principal place of business of Dixie Mill for the State of Louisiana is located in Orleans Parish.

9.

For all times pertinent, **DIXIE MILL** was a large volume, statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed.

10

Made defendant herein is **THE DOW CHEMICAL COMPANY ("DOW CHEMICAL")** (sometimes referred to herein as "Welding Defendant"), an Delaware corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana.

11.

Made defendant herein is **THE ESAB GROUP, INC ("ESAB")** (sometimes referred to herein as "Welding Defendant"), an Ohio corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana.

12

Made defendant herein is **EUTECTIC CORPORATION ("EUTECTIC")** (sometimes referred to herein as "Welding Defendant"), a New York corporation which has conducted and does conduct business in Louisiana

3

13.

Made defendant herein is **GENERAL ELECTRIC COMPANY ("GENERAL ELECTRIC")** (sometimes referred to herein as "Welding Defendant"), a New York corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana.

14.

Made defendant herein is **HOBART BROTHERS COMPANY ("HOBART")** (sometimes referred to herein as "Welding Defendant"), an Ohio corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

15.

Made defendant herein is **ILLINOIS TOOL WORKS, INC. ("ILLINOIS TOOL WORKS")** (sometimes referred to herein as "Welding Defendant"), a Delaware corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

16

Made defendant herein is **INDUSTRIAL WELDING SUPPLY CO. OF HARVEY, INC. ("INDUSTRIAL WELDING SUPPLY")** (sometimes referred to herein as "Supplier Defendant"), a Louisiana corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana. The principal place of business of Industrial Welding Supply for the State of Louisiana is located in Plaquemines Parish.

17.

For all times pertinent, **INDUSTRIAL WELDING SUPPLY** was large volume, statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed.

18.

Made defendant herein is **LINCOLN ELECTRIC COMPANY ("LINCOLN")** (sometimes referred to herein as "Welding Defendant"), an Ohio corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana

4

19.

Made defendant herein is **LINCOLN ELECTRIC HOLDINGS ("LINCOLN HOLDINGS")** (sometimes referred to herein as "Welding Defendant"), an Ohio corporation which has conducted and does conduct business in Louisiana.

20.

Made defendant herein is **METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE")**, a New York corporation which has conducted and does conduct business in Louisiana.

21

Made defendant herein is **MILLER ELECTRIC MANUFACTURING CO., INC. ("MILLER ELECTRIC")** (sometimes referred to herein as "Welding Defendant"), a Wisconsin corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana

22

Made defendant herein is the **NATIONAL ELECTRIC MANUFACTURERS ASSOCIATION ("NEMA")** (sometimes referred to herein as "Trade Association Defendant"), an unincorporated trade organization, which has individually and through its collective members conducted and does conduct business in Louisiana and has minimum contacts with the State of Louisiana

23

Made Defendant herein is **NATIONAL WELDING SUPPLY COMPANY, INC. ("NATIONAL WELDING SUPPLY")** (sometimes referred to herein as "Supplier Defendant"), a Louisiana corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.  The primary place of business of National Welding Supply for the State of Louisiana is located in Iberia Parish.

24.

For all times pertinent, **NATIONAL WELDING SUPPLY** was a large volume, statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed

5

25

**NICHOLS WIRE, INC. ("NICHOLS")** (sometimes referred to herein as "Supplier Defendant"), individually and as successor-in-interest to Gulf Wire Corp. (a Louisiana corporation), a Maryland corporation licensed to conduct business in Louisiana, which conducted and does conduct business in Louisiana. The primary place of business of **NICHOLS** for the State of Louisiana is located in Orleans Parish.

26.

For all times pertinent, **NICHOLS** was a large volume, statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed.

27.

Made defendant herein is **PRAXAIR, INC ("PRAXAIR")** (sometimes referred to herein as "Welding Defendant"), individually and as successor-in-interest to Linde, Union Carbide, Inc and Union Carbide Industrial Gas, Inc., and is a Delaware corporation licensed to conduct business in Louisiana, and for all pertinent times conducted and does conduct business in Louisiana. The primary place of business of **PRAXAIR** in the State of Louisiana is located in Orleans Parish.

28.

Made Defendant herein is **RED BALL OXYGEN CO., INC. ("RED BALL OXYGEN")** (sometimes referred to herein as "Supplier Defendant"), a Louisiana corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

29

For all times pertinent, **RED BALL OXYGEN** was large volume, statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed.

30

Made defendant herein is **SANDVIK, INC. ("SANDVIK")**(sometimes referred to herein as "Welding Defendant"), a Delaware corporation which has conducted and does conduct business in Louisiana

6

31.

Made defendant herein is **SELECT-ARC, INC. ("SELECT-ARC")** (sometimes referred to herein as "Welding Defendant"), an Ohio corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana.

32

Made defendant herein is **SOCRA CORPORATION, as Successor to ARCOS ALLOYS CORPORATION ("ARCOS")** (sometimes referred to herein as "Welding Defendant"), a foreign corporation which conducts business in Louisiana, which has conducted and does conduct business in Louisiana.

33

Made defendant herein is **TDY INDUSTRIES, INC. ("TELEDYNE")** (sometimes referred to herein as "Welding Defendant"), formerly known as Teledyne Industries, Inc., a California corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana

34

Made Defendant herein is **TEMPLET N TEMPLET WELDING SUPPLY COMPANY, INC. ("TEMPLET")** (sometimes referred to herein as "Supplier Defendant"), a Louisiana corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana   The principal place of business of Templet for the State of Louisiana is located in East Baton Rouge Parish.

35

For all times pertinent, **TEMPLET** was statewide supplier of manganese-containing welding products and, on information and belief, marketed and sold manganese-containing welding products to which all Petitioners were exposed

36.

Made defendant herein is **VIACOM, INC., Successor by Merger to CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION ("VIACOM")** (sometimes referred to herein as "Welding Defendant"), a Delaware corporation licensed to conduct business in Louisiana, which has conducted and does conduct business in Louisiana.

7

37.

For all times pertinent, the **Welding Defendants**, and each of them, were manufacturers of

manganese-containing welding products to which all Petitioners were exposed and were members

of the National Electric Manufacturers Association or "**NEMA**".

## JURISDICTION AND VENUE

38.

Jurisdiction is proper in this Court because the amount of damages in controversy, exclusive

of interest and costs, is within the jurisdiction of this Court, and because the torts complained of

herein occurred in the State of Louisiana

39.

The primary business establishments of **A.O. SMITH, PRAXAIR, DIXIE MILL, AND

NICHOLS WIRE** for the State of Louisiana are all located in Orleans Parish.  Thus, pursuant to

article 42 of the Louisiana Code of Civil Procedure, venue is proper in Orleans Parish

## FACTS

**Manganese Containing Welding Products Cause Irreversible Neurologic Damage**

40.

The ordinary and intended use of welding products causes emission of fumes that contain

manganese (hereinafter referred to as "welding fumes").

41.

Since 1837, manganese, in levels that exceed the trace amounts found in the human body,

has been medically recognized as toxic to the human central nervous system.  Exposure to

manganese can and does cause a progressive, disabling neurologic damage that affects a person's

ability to think, talk, eat, move, sleep, and work.

42

The Petitioners, and each of them, were directly exposed to manganese-laden fumes

(sometime referred to as "welding fumes) while using manganese-containing welding products or

equipment and/or were indirectly exposed to manganese-laden fumes  as bystanders while

working in the proximity of other persons using welding products or equipment in the State of

Louisiana   Each of the Petitioners were exposed to welding fumes prior to July 9, 1999, for at

least forty-nine days.

8

43.

As a direct and proximate result of exposure to welding fumes, Petitioners have suffered injury and incurred losses, including, but not limited to permanent neurological and physical damage, severe physical and mental pain, loss of wages, loss of earning capacity, disability, medical expenses, and loss of enjoyment of life.

44

At all times pertinent herein, Petitioners were ignorant of the nature and extent of the risk of harm presented by welding and the manganese in welding fumes.

## WELDING DEFENDANTS/PRODUCTS LIABILITY

45.

For each and every Petitioner herein, substantial exposure to the **WELDING DEFENDANTS'** and **SUPPLIER DEFENDANTS'** manganese-containing welding products and equipment occurred both before and after the implementation of the Louisiana Products Liability Act La R S. § 9 2800, et seq.

46.

Exposure to the manganese-containing welding fumes from the products and equipment manufactured, supplied and/or distributed by the Welding Defendants and their predecessors-in-interest resulted from the normal, foreseeable, and intended use of the products and equipment, without substantial change in the condition in which the Welding Defendants manufactured and/or distributed and/or sold these products and equipment.

47

The **WELDING DEFENDANTS'** products and equipment were in a defective condition at the time the products and equipment left the respective **WELDING DEFENDANTS'** control. The Petitioners were intended and foreseeable users and occasional purchasers of the alleged defective products and equipment, and damages and losses to the Petitioners could reasonably have been anticipated by the Defendants. The defects in the **WELDING DEFENDANTS'** products and equipment include the following·

(a)     lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have anticipated being used,

9

(b)     lack of warnings or lack of sufficient instructions for eliminating the health risks inherent
         in the use of the products, and

48

The **WELDING DEFENDANTS** sold their products and equipment with conscious

disregard for the safety of users of the products and other persons who might be injured thereby.

49.

The injuries complained of by Petitioners include, but are not limited to, a progressive

neurologic injury caused by successive and cumulative exposures to each of the **WELDING**

**DEFENDANTS'** manganese-containing products and equipment and the defective condition of

each of these products and equipment was the substantial contributing cause of Petitioners'

injuries. The **WELDING DEFENDANTS** are hence jointly, solidarily and strictly liable for the

damages caused by their fault.

50.

Due to the time periods over which Petitioners sustained their injurious exposure, the

**WELDING DEFENDANTS** are also liable to Petitioners pursuant to the Louisiana Products

Liability Act, La R.S § 9:2800.57, because the above-referenced products were unreasonably

dangerous because of inadequate warnings.


### LIABILITY OF SUPPLIER DEFENDANTS

51.

The **SUPPLIER DEFENDANTS,** each and individually, sold, distributed, and supplied

manganese-containing welding products, the fumes from which Petitioners inhaled, causing their

injuries

52

**SUPPLIER DEFENDANTS**, each and individually, maintain a large volume of business

and have extensive merchandising practices. For instance, Industrial Welding Supply Co. of

Harvey, Inc ("Industrial Welding"), a **SUPPLIER DEFENDANT**, is "one of the largest

independent welding supply distributors in Louisiana "[1] Established over twenty years ago,

---

*See http //www.indweld.com* (hard copy attached as Appendix B)

10

Industrial Welding's coverage area spans two states [2]  Industrial Welding serves this area by

"[r]epresenting" over 340 manufacturers[3] from five separate locations.[4] According to a trade

journal, Industrial Welding competes with "large national distribution firms."[5] This trade journal

quotes the president of Industrial Welding as stating that "[w]elding equipment is our nucleus

and our specialty. But we've brought in some sharp people in the areas of hand and power tools,

safety equipment, and contractor supplies. We consider ourselves a complete industrial

supplier "[6] As to Industrial Welding's competitive edge, the president of Industrial Welding is

quoted as stating, "Chiasson says end users need a <u>welding expert</u> to answer <u>metallurgical</u>

<u>questions</u>, make power source recommendations and provide trouble-shooting services."[7]

53.

The **SUPPLIER DEFENDANTS** are liable to Petitioners as professional vendors of

manganese-containing welding products because each of the Supplier Defendants are of the size

that  1) they had greater access to information regarding the health hazards of manganese

exposure than Petitioners and the general public, 2) they knew or should have known of the

defects of the manganese-containing welding products and equipment they sold, and 3) they

negligently failed to warn the users, and specifically Petitioners, of potential health hazards from

the use of said products

54

**SUPPLIER DEFENDANTS**, each and individually, are liable to Petitioners because

they knew or should have known that the manganese-containing welding products and equipment

which they sold and supplied were unreasonably dangerous in their normal use, and their failure

to communicate said information rendered them negligent to Petitioners, and such negligence

was the cause of Petitioners' manganese poisoning.

---

*See id*

*See http //www indweld com/pages/manufact html* ((hard copy attached to Appendix B)

*See http //www indweld com/pages/locations html* ((hard copy attached to Appendix B)

*See "Welding market holds steady," Industrial Distribution,* June 1, 2000, available at
http //www manufacturing net/ind/index asp?layout=article&articleid=CA138454 ((hard copy attached to Appendix
B)

*See id*

*See id* (emphasis added)

**Concealment and Intentional Omission by Manufacturer Members of Trade Groups**

55.

**NEMA** is a trade organization comprised partly of manufacturers of manganese-containing welding products.  For all times pertinent herein, **NEMA** formed and maintained a section of its organization devoted to the manufacturers of manganese-containing welding products known as "**NEMA** Electric Welding Section" or "**NEMA** Arc Welding Section" ("**NEMA** Welding Section").

56.

The American Welding Society ("AWS") is an industrial trade organization of manufacturers, suppliers and users of manganese-containing welding products and equipment.

57.

The Ferroalloys Association ("TFA") is an industry advocacy group consisting of producers of chromium, manganese, silicon, and vanadium ferroalloys  For all times pertinent herein, TFA sponsored a manganese subcommittee that included representatives from manufacturers or manganese-containing products and equipment.

58.

**NEMA**, AWS, and TFA's membership included upper level management representatives of manufacturers, including the **WELDING DEFENDANTS**, that produce manganese-containing welding products as well as large consumers and suppliers that purchase the products for use in their operations

59.

For all pertinent times herein, the **WELDING DEFENDANTS**, including, but not limited to **ARCOS, GENERAL ELECTRIC, LINCOLN** and **VIACOM** created and controlled committees within these trade organizations to fraudulently and negligently misrepresent, conceal, suppress, and omit material information about the health effects of welding fumes and necessary precautionary measures.

60.

Specifically, and as further set out below, the **WELDING DEFENDANTS**: (1) concealed the dangers from people exposed to welding fumes by limiting individual membership

12

on relevant committees exclusively or primarily to employees of the **WELDING**

**DEFENDANTS** or their designated representatives; (2) maintained majority or exclusive voting

control of the committees at all times; (3) selected the assignments or proposed projects

undertaken by the committees; (4) dictated the funding of projects undertaken by the

committees, (5) prepared the written records of the business transacted by each committee, and

(6) reviewed and edited studies performed by consultants hired by the committees to the

satisfaction of the **WELDING DEFENDANTS.**

### Negligent and/or Fraudulent Misrepresentation:
### Deliberate Concealment and Omission of Product Health Warnings

61.

In 1932, a widely available medical article was published by Dr. Erich Beintker

documenting two cases of welders with serious neurological injuries caused by manganese

poisoning from welding fumes

62.

On information and belief, this article and other factors caused **MET LIFE** to publish in

or about 1938 a welding safety booklet entitled "Health Protection in Welding."

63.

The **MET LIFE** safety booklet stated that manganese, a respirable fume present in

welding operations "causes a disease similar to paralysis agitans [Parkinson's Disease] which in

chronic cases is seldom fatal, but which. .is always disabling. The **MET LIFE** booklet cited the

1932 Beintker article and stated that "[M]anganese is an important poison from the point of view

of its effects rather than from frequency of exposure to it. Manganese has a selective action on

some of the nerve centers in the brain It causes a disease similar to paralysis agitans, which .

is always disabling "

64.

By 1937, members of **NEMA** Welding Section, including the **WELDING**

**DEFENDANTS**, (and specifically, **ARCOS, GENERAL ELECTRIC, LINCOLN** and

**VIACOM**) knew of the contents of the 1932 Beintker article and the contents of the **MET**

**LIFE** safety booklet

13

65.

In or about January of 1938, **MET LIFE** decided to revise its safety booklet and actively invited **NEMA** to participate in the redrafting

66.

On or about  January 3, 1938, W.J. McConnell, M.D., the Assistant Medical Director, Industrial Health Section, **MET LIFE**, wrote to W  Reddie, an employee of Westinghouse **(predecessor to VIACOM)**, and then chairman of **NEMA**'s Welding Section,  advising Reddie that  **MET LIFE'S** welding safety booklet would be revised and that  **NEMA** was invited to participate in the revision process.

67.

On January 11, 1938, Mr. Reddie wrote to the **NEMA**'s Director of Engineering and stressed the importance of the revision of the publication and his cooperation between **NEMA** and the **MET LIFE** in regard to their publications   Mr. Reddie further noted that the unrevised Met Life welding safety booklet made recommendations that were

> *[V]ery far fetched and would make welding appear to be an unusually hazardous occupation  This situation should not exist .  What we want is a definite contact with the Metropolitan Life Insurance company, which will insure cooperation between the NEMA welding section and the insurance company in regard to their publication*

68

On January 20, 1938,  the Electric Welding Section of **NEMA** met and voted that "Chairman Reddie be empowered to act as a committee of one to follow this matter and assist in rewriting the [Met Life] booklet "  Present at the meeting were the following **NEMA** members: **ARCOS ALLOYS CORPORATION**, Electric Arc Cutting & Welding Co., **General Electric Co.**, Harnischfeger Corp , **Lincoln Electric Co.**, Page Steel & Wire Division of American Chain & Cable Co . Una Welding Company, and **Westinghouse Company**  The following were also present:  Franklin Transformer Company, Marquette Manufacturing Co ; McKay Company; **NEMA** Regulatory Legislation Department, and **NEMA** Electric Welding Section

69

On or about March 18, 1938, Airco, as predecessor to **THE BOC GROUP**,  published a "confidential report" which quoted the unrevised and original **MET LIFE** welding safety booklet regarding the toxicity of manganese  The confidential report also noted the 1932 Beintker article

14

70.

On or about May of 1938, **MET LIFE** published its second edition of "Health Protection in Welding " This booklet again stated that manganese causes a disease similar to Parkinson's Disease.

71.

On or about June 23, 1938  **NEMA** meeting minutes indicate that its membership considered the revision of the  **MET LIFE** welding safety booklet only "80% successful." Present at the meeting were the following **NEMA** members: **ARCOS ALLOY CORPORATION**; Champion Rivet Co.; The Electric Arc Cutting & Welding Co ; **GENERAL ELECTRIC**, Harnischfeger Corp ; **LINCOLN ELECTRIC CO.**; Page Steel & Wire Division of American Chain & Cable Co., Una Welding Company, **WESTINGHOUSE COMPANY**, and Wilson Welder & Metals, Co., Inc  The following were also present: American Welding Society; Franklin Transformer Company; Hollup Corporation, Marquette Manufacturing Co., Maurath, Inc , McKay Company, **NEMA** Electric Welding Section; and Universal Power Corp  Mr  Reddie was the chairman and presided over the meeting

72

At the urging of **NEMA** and its members,  **MET LIFE** omitted all of its earlier references to the effects of manganese poisoning.  This subsequent edition of the **MET LIFE** booklet, as rewritten, stated as follows

> *Selenium, manganese, antimony, chromates, and other rare materials may also be encountered in some welding operations   The amount present, however, usually is negligible, and no cases of poisoning from these materials have been definitely ascribed to welding*

73.

Between 1958 and the early 1980's, the AWS sponsored committees and groups which issued technical documents demonstrating their collective knowledge that manganese in welding fumes is a potentially toxic substance. The AWS committees  (1) reviewed industrial hygiene articles identifying manganese as a toxic substance in welding fumes; (2) published documents discussing neurological injuries in welders, (3) acknowledged notice that symptoms of manganese poisoning resemble the symptoms of Parkinson's Disease, (4) were aware and received notice that welding fumes could easily exceed the recommended occupational exposure

15

guidelines, (5) received notice of claims of welders suffering neurological injuries from manganese in welding fumes; and (6) knew that manganese poisoning from welding fumes could be misdiagnosed as idiopathic Parkinson's Disease, and that the problem was so widespread that it justified funding an epidemiological study.

74.

At all pertinent times hereto, the **WELDING DEFENDANTS** participated in the AWS sponsored groups and committees and/or were aware of the knowledge and/or activities of the AWS-sponsored groups and committees.

75.

Beginning in 1980 and continuing until at least 1996, the **WELDING DEFENDANTS** intentionally, knowingly, and recklessly agreed to conceal health hazards of welding fumes by adopting a format for the Hazardous Material and Health Hazard Data sections of the Material Safety Data Sheets (MSDS) for welding products that omitted reference to the manganese content of welding fumes, the neurological damage caused by manganese in welding fumes, and necessary instructions for protection against the health hazards of welding fumes

76.

**MET LIFE, NEMA, THE WELDING DEFENDANTS** are liable unto Petitioners for the concealment and/or the intentional omission and/or negligent misrepresentation and/or fraudulent misrepresentation of health hazards of welding fumes as set forth above and for other acts which may later be discovered.

### Civil Conspiracy

77.

**WELDING DEFENDANTS, NEMA, MET LIFE** and other trade organizations, by and though their principals, agents, servants and employees engaged in a civil conspiracy to sell and to continued to sell, defective and harmful products. In furtherance, Defendants acted to avoid the results of the scrutiny of governmental and safety organizations that would have occurred had Defendants not concealed the true nature and extent of the dangers of manganese-containing welding consumables. Accordingly, all **WELDING DEFENDANTS, NEMA** and **MET LIFE**, are jointly, severally and solidarily liable for Petitioners's damage.

78.

**GENERAL ELECTRIC, LINCOLN, VIACOM, MET LIFE and NEMA,**

individually, and as members of a concerted action, and as agents of one another, had a common

general goal for their conspiracy of suppressing and misrepresenting the truth concerning the

hazards of welding fumes and their respective products, and they assisted and encouraged one

another in carrying out the wrongful acts perpetrated in pursuit of that goal. **GENERAL**

**ELECTRIC, LINCOLN, VIACOM, MET LIFE and NEMA** intended through the acts

described herein and through other acts taken in furtherance of the conspiracy:

(a)     to maintain a favorable atmosphere for the continued sale, distribution and use of
        manganese-containing welding rods;

(b)     to assist in the continued pecuniary gain of the conspirators through the sale of
        manganese-containing welding rods;

(c)     to influence or suppress in the conspirators' favor legislation to regulate welding fumes
        and limit medical and disability claims for compensation;

(d)     to provide a defense in lawsuits brought for injury resulting from welding fumes;

(e)      to prevent relevant medical inquiry about welding fumes;

(f)     to mislead the general public and the Petitioners about the hazards associated with
        welding fumes,

(g)     to induce the Petitioners to use and continue to use their products, and

(h)     to induce the Petitioners to refrain from using non-manganese-containing
        welding products and equipment.

79

At all relevant times, **GENERAL ELECTRIC, LINCOLN, VIACOM, MET LIFE**

and **NEMA**, with knowledge of the health hazards of welding fumes acted in concert and

conspired in pursuance of a common plan or design to commit the following tortious acts:

(a)     fraudulently conceal, misrepresent, and suppress material scientific and medical
        information about the toxic effects of manganese in welding fumes;

(b)     deliberately fail to warn persons in proximity of welding fumes of the known health
        hazards of manganese in welding fumes,

(c)     deliberately breach their duty to instruct about proper ventilation, safety equipment, or
        other precautionary measures which would protect against the health hazards of
        manganese in the welding process;

(e)     sell welding products in a defective condition without necessary warnings of the
        catastrophic health hazards or instructions concerning precautionary measures

17

80.

**GENERAL ELECTRIC, LINCOLN, VIACOM, MET LIFE and NEMA** knowingly agreed to participate in this conspiracy or concerted action by one or more of the following means·

(a)     actively taking part;

(b)     furthering it by cooperation; or

(c)     ratifying and adopting acts of other conspirators done for their benefit.

81.

**GENERAL ELECTRIC, LINCOLN, VIACOM, MET LIFE and NEMA** participated in furthering the unlawful and/or improper purposes of the conspiracy by delegating responsibilities to and carrying these out through trade association committees.

82.

As a direct and proximate result of the conspirators' intentional publication of deceptive and misleading information and their suppression of truthful information, and of the other tortious acts described herein, manganese-containing welding products and equipment were used by the Petitioners, and welding fumes have been inhaled, resulting in damages.

**DAMAGES**

83

As a proximate result and cause of the fault of all of the Defendants, and each of them, and their acts and omissions as herein above alleged, and because of the harm and injury caused to Petitioners suffers and prays for recovery of and reimbursement for the following items of damages

(a)     Recovery of damages for physical pain and suffering, past and future,

(b)     Recovery of damages for emotional distress, past and future,

(c)     Recovery of all past and future medical expenses necessitated by the injuries sustained as pled herein,

(d)     Recovery for loss of income and earning capacity,

(e)     Recovery of damages for medical monitoring,

(f)     Interest from the date of judicial demand,

18

(g)   All costs incurred for the prosecution of this action;

(h)   Any and all damages, in law or equity, allowed by law.

WHEREFORE, Petitioners pray that the Defendants, **A.O. SMITH CORPORATION, ARCOS INDUSTRIES, L.L.C., as Successor to ARCOS ALLOYS CORPORATION AIRGAS-GULF STATES, INC., THE BOC GROUP, INC., CATERPILLAR, INC., DELORO STELLITE COMPANY, INC., DIXIE MILL, INC., THE DOW CHEMICAL COMPANY, THE ESAB GROUP, INC., EUTECTIC CORPORATION; GENERAL ELECTRIC COMPANY, HOBART BROTHERS COMPANY, ILLINOIS TOOL WORKS, INC., INDUSTRIAL WELDING SUPPLY CO. OF HARVEY, INC., LINCOLN ELECTRIC COMPANY, LINCOLN ELECTRIC HOLDINGS, METROPOLITAN LIFE INSURANCE COMPANY, MILLER ELECTRIC MANUFACTURING CO., INC., NATIONAL ELECTRIC MANUFACTURERS ASSOCIATION, NATIONAL WELDING SUPPLY COMPANY, INC., NICHOLS WIRE, INC., PRAXAIR, INC., RED BALL OXYGEN CO., INC., SANDVIK, INC., SELECT-ARC, INC., SOCRA CORPORATION, as Successor to ARCOS ALLOYS CORPORATION ; TDY INDUSTRIES, INC., TEMPLET N TEMPLET WELDING SUPPLY COMPANY, INC., and VIACOM, INC., Successor By Merger to CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION,** each individually and on behalf of their predecessors-in-interest, be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Petitioners be awarded recovery from the Defendants, jointly and severally, for their damages as alleged, together with their costs and disbursements herein and interest on said judgments from the date of judicial demand at the proper rate of interest, and for such other and further relief, special and general, at law and in equity that the court may deem proper

Respectfully submitted,

MARTZELL & BICKFORD

_____
SCOTT R. BICKFORD, T.A. (#1165)
SPENCER R. DOODY (27795)
TIFFANY G. CHASE (24842)
338 Lafayette Street
New Orleans, LA 70130
Telephone: (504) 581-9065
Facsimile:  (504) 581-7635
and

19

DREW RANIER (8320)
BRETT M POWERS (26098)
SARAH RANIER KEARNEY (25838)
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602
Telephone: (337) 494-7171
Facsimile: (337) 494-7218

**PLEASE SERVE:**

**A.O. SMITH CORPORATION**
Through its agent for service of process
The Prentice-hall Corporation System, Inc.
701 South Peters Street, Second Floor
New Orleans, La 70130

**AIRGAS-GULF STATES, INC.**
Through its agent for service of process:
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA, 70809

**ARCOS INDUSTRIES, L.L.C.**
**as successor to ARCOS ALLOYS**
**CORPORATION**
Through Randy Baxter
1 Arcos Drive
Mount Carmel, PA 17851

**THE BOC GROUP, INC.**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**CATERPILLAR, INC.**
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**DELORO STELLITE COMPANY, INC.**
Through its agent for service of process
CT Corporation System
120 South Central Avenue
Clayton, MO 63105

**DIXIE MILL, INC.**
Through its registered agent
Richard M Cain
901 Tchoupitoulas Street
New Orleans, LA 70130

**THE DOW CHEMICAL COMPANY**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

20

**THE ESAB GROUP, INC.**
Through its agent for service of process.
The Corporation Trust Company,
The Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**EUTECTIC CORPORATION**
Through its registered agent for service, Thomas E Heftler
Strook & Strook & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4982.

**GENERAL ELECTRIC COMPANY**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**HOBART BROTHERS COMPANY**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**ILLINOIS TOOL WORKS, INC.**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**INDUSTRIAL WELDING SUPPLY CO. OF HARVEY, INC.**
Through its agent for service of process:
Martin J. Kearns
111 Buras Drive
Belle Chase, LA 70037

**LINCOLN ELECTRIC COMPANY**
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**LINCOLN ELECTRIC HOLDINGS**
Through its President Anthony A. Massaro
22801 St Clair Avenue
Cleveland, OH 44117

**METROPOLITAN LIFE INSURANCE COMPANY**
Through its agent for service of process:
The Secretary of State
State of Louisiana
P.O Box 94125
Baton Rouge, LA 70804-4125

21

**MILLER ELECTRIC MANUFACTURING CO., INC.**
Through its agent for service of process
CT Corporation System
8025 Excelsior, #200
Madison, WI 53703

**NATIONAL ELECTRIC MANUFACTURERS ASSOCIATION**
NEMA
1300 North 17th Street, Suite 1847
Rosslyn, VA 22209

**NATIONAL WELDING SUPPLY COMPANY, INC.**
Through its agent for service of process:
Michael J Dempsey
3114 East Highway 90
New Iberia, LA 70560

**NICHOLS WIRE, INC.**
Through its agent for service of process:
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**PRAXAIR, INC.**
Through its agent for service of process
Prentiss-Hall Corporation System, Inc.
701 South Peters Street, 2nd Floor
New Orleans, LA 70130

**RED BALL OXYGEN CO., INC.**
Through its agent for service of process
Larry E. Kennedy
690 Regency Blvd.
Shreveport, LA 70116

**SANDVIK, INC.**
Through its CEO Donald E Debacher
1702 Nevins Road
Fair Lawn, NJ 07410

**SELECT-ARC, INC.**
Through its agent for service of process
Paul E. Zimmer
2700 Ketting Tower
40 N. Main Street
Dayton, OH 45423

**SOCRA CORPORATION,**
**as Successor to ARCOS ALLOYS**
**CORPORATION**
Through Randy Baxter
1 Arcos Drive
Mount Carmel, PA 17851

**TDY INDUSTRIES, INC.**
Through its agent for service of process.
CT Corporation System
8550 United Plaza Blvd
Baton Rouge, LA, 70809

**TEMPLET N TEMPLET WELDING SUPPLY COMPANY, INC.**
Through its agent for service of process:
M. J Kearns
12238 E. Milburn Drive
Baton Rouge, LA 70815

**VIACOM, INC., Successor by Merger to CBS CORPORATION, F/K/A
WESTINGHOUSE ELECTRIC CORPORATION**
Through its agent for service of process:
Corporation Service Company
320 Somerulos
Baton Rouge, LA 70802-6129

F \Clients\WeldingRod1 itigation Group 16\Bingham James\Pleadings\CDC Pleadings\Petition for Damages 7-1-04 wpd

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED